UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OSCAR QUIROZ PERAZA,<br><br>On behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>G & M MANAGEMENT, LLC<br>d/b/a BRANFORD CAR WASH,<br><br>   Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:   Case No. 3:19-cv-01298-RMS<br>:<br>:<br>:<br>:<br>:<br>:   February 26, 2020 |

### JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE

Plaintiff Oscar Quiroz Peraza ("Plaintiff") and Defendant G & M Management, LLC ("Defendant") (collectively, the "Parties") have reached a carefully negotiated individualized settlement of Plaintiff's claims as set forth in the Settlement Agreement and Release (the "Agreement"), attached hereto as Exhibit A. The Parties now move the Court for approval of the Agreement and dismissal of this action with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

### Background

On August 21, 2019, Plaintiff filed his three-count complaint, alleging two causes of action arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, including the following: (1) unlawful withholding of Plaintiff's tips in violation of 29 U.S.C. § 216(b) and 29 U.S.C. § 203(m)(2)(B); (2) retaliation for engaging in protected activity in violation of 29 U.S.C. § 215; and (3) unlawful withholding of wages in violation of Connecticut General

{N5665034}

Statutes §§ 31-71 & 31-72. (Doc. No. 1.) The Plaintiff pursued the first claim on his own behalf and as a collective action on behalf of those similarly situated.

The Agreement resolves all the Plaintiff's individual claims for, among other things, a sum total payment of $7,000. The $7,000 is comprised of the following payment that are allocated to the claims as indicated: (1) $5,500 for emotional distress on the alleged FLSA retaliation claim; (2) $500 in back pay for the alleged FLSA retaliation claim; (3) $250 in unpaid wages (i.e. tips) for the alleged FLSA withholding claim and Connecticut wage claim; and (4) $750 in liquidated damages on both alleged FLSA claims and the Connecticut wage claim. (*See* Ex. A.)

## Standard of Review

"[S]tipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Courts in this Circuit have considered a set of five non-exclusive factors in evaluating the fairness of an FLSA settlement agreement:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Smelser v. Martin's Famous Pastry Shoppe, Inc.*, No. 3:17-CV-01813 (MPS), 2019 WL 3006539, at *1 (D. Conn. July 10, 2019) (quotations and citations omitted).

## Discussion

### A. The Agreement was negotiated at arm's length between experienced counsel and there is no possibility of fraud of collusion.

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Russell v. Broder & Orland, LLC*, No. 3:17-CV-1237 (VAB), 2018 WL 3104101, at *5 (D. Conn. June 22, 2018) (quotation and citation omitted). Here, both Parties were represented by competent and experienced counsel who negotiated on behalf of the Parties at arm's length in reaching the Agreement in the context of adversarial litigation.

Further, the Plaintiff's counsel is James Bhandary-Alexander, a staff attorney for the New Haven Legal Assistance Association, Inc., an organization with a mission to provide "high-quality legal services to individuals and groups unable to obtain legal services because of limited income, age, disability, discrimination and other barriers." Attorney Bhandary-Alexander has dedicated his practice to representing low-wage workers in state and federal courts, and has extensive experience doing so. Thus, the Plaintiff was represented by highly experienced and competent counsel. Moreover, there is no risk of fraud or collusion in this case. As reflected in the Agreement, Attorney Bhandary-Alexander expressly waived any claim to attorneys' fees in connection with the resolution of this case. Thus, the Court need have little concern over whether the Plaintiff's interests were of primary importance to his counsel throughout the negotiations.

### B. The settlement payment amounts are fair and reasonable payments of legally and factually disputed claims.

> The determination of whether a settlement amount is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum. . . . Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.

*Kiefer v. Moran Foods, LLC*, No. 12-CV-756 WGY, 2014 WL 3882504, at *6 (D. Conn. Aug. 5, 2014).

With respect to the Plaintiff's first claim, the Agreement allocates a $250 payment for allegedly unpaid tips and a corresponding payment of $250 in liquidated damages. This is fair and reasonable given the significant legal and factual uncertainty regarding Plaintiff's claim. In particular, the Plaintiff alleges that the Defendant withheld tips in violation of 29 U.S.C. § 216(b) and 29 U.S.C. § 203(m)(2)(B) by withholding earned tips, and by diverting tips to Defendant's managers. Section 203(m)(2)(B) was amended on March 23, 2018 and provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless whether or not the employer takes a tip credit." Because it is still a relatively new law, the U.S. Department of Labor has not yet issued final rulemaking in response to it, and there are still substantial open questions about the scope of liability under this law.

The Defendant disputes that it has unlawfully withheld earned tips, kept any tips of its employees, and that the Defendant's "managers" are managers within the meaning of § 203(m)(2)(b). In particular, the DOL issued a Field Assistance Bulletin No. 2018-3 indicating that the DOL would use the executive employee overtime exemption criteria of 29 C.F.R. § 541.100(a)(2)-(4) to determine whether an employee is a "manager" or "supervisor" within the meaning of 29 U.S.C. § 203(m)(2)(B). U.S. Department of Labor, Wage & Hour Division, Field Assistance Bulletin No. 2018-3, *available at* https://www.dol.gov/agencies/whd/field-assistance-bulletins/2018-3. Defendant's position is that its "managers" are non-exempt employees and therefore do not meet the criteria for inclusion in 29 U.S.C. § 203(m)(2)(B). In short,

Defendant's managers spend the majority of their time providing direct car washing services, and are paid hourly wages and overtime, like all other non-exempt employees.

In the alternative, the Defendant also contends that consistent with DOL regulations, its "managers" are at least dual-function employees who are entitled to receive tips for the portion of time they spend performing non-management functions washing cars. *See* 29 C.F.R. § 531.56(e). Accordingly, the Defendant contends that its "managers" are entitled to keep at least that portion of their tips attributable to non-management-type duties (i.e. car washing) which is the significant majority of Defendant's "managers" duties. Accordingly, there is significant risk associated with the Plaintiff's potential recovery on this claim.

Even if the Plaintiff could prevail on this claim, the potential damages are not high and there is significant uncertainty regarding the scope of the potential damages. For example, in the course of administering the tip pool, the Defendant's "managers" made a record of who received tips on any given day by making a check-mark notation on a record called a "Labor Sheet." The Labor Sheets for the period of August 2018 through Plaintiff's termination in May 2019 demonstrate that the Plaintiff did not receive a half-a-day's worth of tips on May 2, 2019. (Labor Sheet dated May 2, 2019 attached hereto as Exhibit B.) Accordingly, the Labor Sheets show an alleged loss of tips of only $5 to $10 for the period. While the Plaintiff claims that he lost substantially more tips than this amount, the Plaintiff does acknowledge that he has little objective evidence to corroborate the claim, and that it would be difficult to calculate the amounts he claims to have lost with precision. Accordingly, the payment of $250 for allegedly lost tips is a fair and reasonable amount for the claim.

With respect to the Plaintiff's second claim, the Agreement allocates a $5,500 payment for emotional distress, a $500 payment for back pay and a corresponding payment of $500 in

liquidated damages. This is fair and reasonable given the significant factual disputes regarding Plaintiff's claim, and the small range of possible recovery on this claim. The Plaintiff alleges that he was retaliated against for engaging in protected activity in violation of 29 U.S.C. § 215. 29 U.S.C. § 215(a)(3) prohibits any person from discharging an employee for filing a complaint related to the FLSA.

The Defendant strongly disputes that it discharged the Plaintiff for his complaints about tips. The Defendant claims that it discharged the Plaintiff because he disrupted the workplace and directed an aggressive and insubordinate profanity at his supervisor. The Defendant believes that it will be able to corroborate its explanation for the Plaintiff's termination through multiple witnesses. While the Plaintiff does not agree with the Defendant, the Plaintiff does acknowledge that the retaliation claim will turn on contested issues of fact.

Again, even if the Plaintiff were to prevail on this claim, the range of recovery is limited, and the settlement payment is fair and reasonable. With respect to the Plaintiff's claim for back pay (i.e., wages from the date of termination in May through settlement), the Plaintiff steadily decreased his hours over time. (Plaintiff's W-2 Wage and Tax Statements for 2017 & 2018, attached hereto as Exhibit C (evidencing a substantial decrease in W-2 earnings year-over-year.) In 2019, the Plaintiff was working only approximately ten (10) hours per week, equaling roughly $400 per month. Thus, the Plaintiff's back pay claim would not exceed approximately $3,200 for the roughly eight-month period. In addition, the Plaintiff's claim for emotional distress is a garden variety emotional distress claim. Accordingly, the payment of $5,500 for garden variety emotional distress, $500 in back pay, and $500 in liquidated damages are reasonable amounts given the disputed nature of the claim.

### C. The confidentiality and non-disparagement provisions in the Agreement are fair and reasonable.

"[T]he FLSA . . . imposes no *per se* bar on confidentiality provisions in settlements. Rather, the fairness of restrictions on the parties' ability to disclose details of a settlement depends on the particular circumstances of any given case." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). "Courts reviewing settlements after *Cheeks* have required settlements to include a carve-out for truthful statements about plaintiffs' experience litigating their case." *Russell v. Broder & Orland, LLC*, No. 3:17-CV-1237 (VAB), 2018 WL 3104101, at *4 (D. Conn. June 22, 2018) (quotation and citations omitted).

Here, the Parties have submitted the Agreement on the public docket, have included the necessary *Cheeks*' carve-outs in the Agreement, and have otherwise agreed to only reasonably limited confidentiality and non-disparagement obligations. Accordingly, the Court should approve the confidentiality and non-disparagement provisions of the Agreement as fair and reasonable. *See id.* (approving non-disclosure provision that "merely states that Plaintiffs and Plaintiffs' counsel 'will not contact the media or utilize any social media regarding this Settlement or its terms,' and that, if contacted about the Settlement, Plaintiffs and their counsel shall respond 'no comment' or be limited solely to words to the following effect: 'The matter has been resolved.'").

### D. The releases in the Agreement are fair and reasonable.

"[T]here is nothing inherently unfair about a release of claims in an FLSA settlement." *Lola*, 2016 WL 922223, at *2. Thus, courts in this Circuit will approve of broad releases where there is not a significant risk that a plaintiff is waiving unknown rights. *See Panganiban v. Medex Diagnostic & Treatment Ctr., LLC*, No. 15CIV2588AMDLB, 2016 WL 927183, at *3

(E.D.N.Y. Mar. 7, 2016). In addition, if "the Settlement provides for both a waiver of claims against Defendants and a waiver of claims against Plaintiffs," it "assuage[es] concerns that the waiver unfairly benefits only Defendants." *Lola*, 2016 WL 92223, at *2; *see also Pinguil v. We are all Frank, Inc.*, No. 17-CV-2237 (BCM), 2018 WL 2538218, at *3 (S.D.N.Y. May 21, 2018) ("[R]eleases that go beyond the wage and hour claims actually asserted by the plaintiffs may be deemed fair and reasonable in settlement of an FLSA action if, among other things, they are mutual.").

Here, the Plaintiff did assert non-FLSA claims, suggesting that there is little risk that the Plaintiff is waiving some unknown rights, as the Plaintiff's counsel had "every incentive to plumb the relationship between the defendant[] and the plaintiff for additional potentially wrongful conduct." *Panganiban*, 2016 WL 927183, at *3. Further, the Defendant gave the Plaintiff a broad general release of claims, creating mutuality between the releases. Thus, "the Court [should be] satisfied that the Settlement, including the release of non-FLSA claims, was the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel." *Lola*, 2016 WL 922223, at *2.

## Conclusion

In sum, the Parties in this case were both represented by able and competent counsel who negotiated a fair and reasonable settlement of this matter at arms' length in the context of an adversarial litigation. Therefore, the Court should approve the Agreement as a fair and reasonable compromise of disputed FLSA claims, and should dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

THE PLAINTIFF,
OSCAR QUIROZ PERAZA

*/s/ James Bhandary-Alexander*

James Bhandary-Alexander
Fed. Bar. No. ct28135
New Haven Legal Assistance Assoc.
426 State Street
New Haven, CT 06510
Tel.: (203) 946-4811
Fax: (203) 498-9271
jbhandary-alexander@nhlegal.org

THE DEFENDANT,
G & M MANAGEMENT, LLC
d/b/a BRANFORD CAR WASH

*/s/ Damian K. Gunningsmith*

Damian K. Gunningsmith
Fed. Bar No. ct29430
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Tel.: (203) 777-5501
Fax: (203) 784-3199
dgunningsmith@carmodylaw.com

## CERTIFICATION OF SERVICE

I hereby certify that on February 26, 2020, a copy of the foregoing Joint Motion for Approval of Settlement and Dismissal with Prejudice was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Damian K. Gunningsmith
Damian K. Gunningsmith